FILED & JUDGMENT ENTERED
Steven T. Salata

Jul 02 2012

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

Laura T. Beyer
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Charlotte Division**

| | |
|---|---|
| In re:<br><br>William Joseph Nolan, III and Martha Louise Hemphill-Nolan,[1]<br><br>Debtors. | Case Number   09-31456<br><br>Chapter 11 |

**ORDER DENYING MOTION OF DERICK AND DANIELLA HEMPHILL FOR TURNOVER OF PERSONAL PROPERTY AND LEAVE OF COURT TO PURSUE STATE LAW CLAIMS AGAINST THE TRUSTEE**

This matter came on for hearing on Thursday, June 21, 2012 on the *Motion of Derick and Daniella Hemphill for Turnover of Personal Property & Leave of Court to Pursue State Law Claims Against the Trustee* (D.E. 668) (the "Motion") filed on May 16, 2012 by Derick Hemphill ("Hemphill") and Daniella Hemphill (together with Hemphill, "Movants"), through counsel, and the objection to the relief requested in the Motion (D.E. 679) (the "Objection") filed on May 29, 2012 by Edward P. Bowers (the "Trustee"), the chapter 11 trustee for William Joseph Nolan, III and Martha Louise Hemphill-Nolan (the "Debtors") and the trustee of the Marvin-Waxhaw Associates/Nolan Liquidating Trust established by agreement dated January 25, 2011 with

---

[1] This case has been substantively consolidated with *In re Marvin-Waxhaw Associates, LLC*, case number 09-31455.

1

Edward P. Bowers, chapter 11 bankruptcy trustee for the Debtors, as Grantor (the "Liquidating Trust"), through counsel. At the hearing, Bryan W. Stone of Stone & Witt, P.A. appeared on behalf of Movants and Michael L. Martinez of Grier Furr & Crisp, PA appeared on behalf of the Trustee. The Court, having reviewed the pleadings and the record in this case and having considered the evidence presented and the arguments of counsel, finds and concludes as follows:

## FACTUAL BACKGROUND

The Debtors filed a voluntary petition for relief (the "Petition") pursuant to chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on June 5, 2009 (the "Petition Date"). Pursuant to §§ 1107 and 1108 of the Bankruptcy Code and prior to December 16, 2009, the Debtors were in possession of their property and were managing their affairs as debtors-in-possession. On December 30, 2009, the Court appointed the Trustee as the Debtors' chapter 11 trustee.

On Schedule B to the Petition, the Debtors represented that they personally held the following property interests as of the Petition Date: (a) a joint interest worth $17,000.00 in that certain equipment having a vehicle identification number of 1XPFD98X8VN425463 (the "1997 Peterbilt"); (b) a joint interest worth $15,000.00 in that certain equipment having a vehicle identification number of 1B9PA42246FBJ2950 (the "2006 Big John," and together with the 1997 Peterbilt, the "Equipment"); and (c) a joint ownership interest in H & N Grading and Clearing, Inc. ("H & N").

On June 10, 2010, the Trustee filed a motion for authority to sell certain construction equipment at an auction to be conducted by Ritchie Bros. Auctioneers (D.E. 143) (the "First Equipment Auction Motion"). The 2006 Big John is included in Exhibit A to the First Equipment Auction Motion as among the equipment to be auctioned. The Trustee served

2

Movants with a notice of hearing on the First Equipment Auction Motion. Movants did not object to the First Equipment Auction Motion. On June 18, 2010, the Court entered an order authorizing the sale described in the First Equipment Auction Motion (D.E. 149) (the "First Auction Order").

On August 27, 2010, the Trustee filed another motion seeking authority to liquidate the remaining pieces of heavy equipment of the Debtors' estate not previously sold at the preceding Ritchie Bros. auction (D.E. 169) (the "Second Equipment Auction Motion"). The 1997 Peterbilt is included among the equipment to be auctioned pursuant to that motion. The Trustee served Movants with a notice of opportunity of hearing on the Second Equipment Auction Motion, which notice specifically identified the 1997 Peterbilt as one of the pieces of equipment to be sold. Movants did not object or otherwise respond to the Second Equipment Auction Motion. On September 20, 2010, the Court entered an order authorizing the sale described in the Second Equipment Auction Motion (D.E. 190) (the "Second Auction Order").

Not only did Movants fail to object to either the First Equipment Auction Motion or the Second Equipment Auction Motion or otherwise try to stop the Trustee's auctioneer from selling the Equipment, Hemphill cooperated with the Trustee's efforts to sell the Equipment. For example, Hemphill physically assisted the Trustee's agents in their efforts to acquire actual possession of the Equipment.

In an email dated September 13, 2010, the Trustee directed the Debtors to deliver the equipment titles to the auctioneer. A review of those titles indicates that, as of the Petition Date, the Equipment was titled not in the name of the Debtors, but rather in the name of "H & N Clearing and Grading" at the address of the Debtors. "H & N Clearing and Grading" is not an entity existing or authorized to conduct business in the State of North Carolina.

3

Pursuant to the auction authorized by the First Auction Order, the 2006 Big John was liquidated for $14,000.00 on June 30, 2010. Pursuant to the auction authorized by the Second Auction Order, the 1997 Peterbilt was liquidated for $14,000.00 on September 28, 2010.

On September 29, 2010, the Trustee filed his *Plan of Liquidation of Marvin-Waxhaw Associates, LLC and William Joseph Nolan, III and Martha Louise Hemphill-Nolan* (D.E. 198) (the "Plan"). On January 20, 2011, the Court entered an order confirming the Plan, as modified therein (D.E. 343) (the "Confirmation Order"). Pursuant to the Plan and Confirmation Order, all valuable assets of the Debtors' bankruptcy estate—including any proceeds from the sale of Equipment—were transferred to the Liquidating Trust as of the February 4, 2011 effective date (the "Effective Date"). Also, the ownership interest held by the Debtors' bankruptcy estate in H & N was abandoned pursuant to the Plan and Confirmation Order as of the Effective Date. Movants received a copy of the Plan during the plan disclosure and solicitation process, but raised no objections thereto.

It was not until March 8, 2011 that the Trustee learned that Movants had concerns about the sale of the Equipment. On that date, counsel for the Debtors sent the Trustee's counsel two emails indicating that the Debtors had complained that the Trustee had sold equipment owned by Movants. Up until that point, the Trustee had relied on the representations made on the Debtors' schedules, as well as the Debtors' conduct, in concluding that the Equipment was property of the Debtors' bankruptcy estate.

Upon discovering that concerns were being raised with respect to the auction of the Equipment, the Trustee and his counsel diligently investigated the ownership of the Equipment and H & N by, *inter alia*, entering into a series of communications with counsel for the Debtors and Movants. The Trustee's investigation revealed inconsistent and inconclusive documentary

4

evidence as to the ownership of the Equipment or H & N, including: (a) a "Receipt for Plate and/or Sticker" prepared by the North Carolina Division of Motor Vehicles listing the owner of the 1997 Peterbilt as "H & N Clearing and Grading"; (b) an international fuel tax license issued by the North Carolina Department of Revenue to "Hemphill Nolan Realty Group Inc" with respect to the 1997 Peterbilt; (c) an "Official North Carolina Registration" for the 1997 Peterbilt listing the registrant as "Hemphill Nolan Realty Group Inc" and the titled owner as "H & N Clearing and Gradin[g]"; (d) an insurance card for the 1997 Peterbilt issued by Cincinnati Insurance Company showing "Union Development Services Inc" as the insured; and (e) an insurance card for the 2006 Big John issued by Cincinnati Insurance Company showing "Union Development Services Inc" as the insured. Hemphill-Nolan Realty Group, Inc. and Union Development Services, Inc. are corporations owned and controlled by the Debtors.

On August 12, 2011, Movants filed a *Motion to Reconsider Order Disallowing Claim* (D.E. 549) in which they alleged that the Equipment was purchased by Movants on the Debtors' behalf. Movants asserted in said motion that they were personally due payment from the Debtors for an outstanding pre-petition debt based on the purchase price of the Equipment.

On April 12, 2012, Hemphill gave deposition testimony in connection with an avoidance action arising out of this bankruptcy case, *Bowers v. Hemphill*, adversary proceeding number 11-3085. During said deposition, Hemphill contradictorily alleged that the Equipment was owned by him personally, and that the Equipment was owned by H & N.

Movants filed the Motion on May 16, 2012 seeking: (a) immediate turnover of all or portion of the proceeds from the auction of the Equipment; and (b) leave of the Court to pursue state law remedies against the Trustee.

5

On June 21, 2012, the Court heard evidence and argument on the Motion, and the Trustee and Hemphill each testified as to matters related to the Motion.

## JURISDICTION

This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and § 10.1 of the confirmed Plan. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E) & (O).

## DISCUSSION

I. **Movants' Request for Immediate Turnover of All or a Portion of the Proceeds from the Auction of the Equipment.**

   A. **The Motion is Improper According to Rule 7001 of the Federal Rules of Bankruptcy Procedure.**

   Pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure, a proceeding to recover money or property must be initiated and prosecuted as an adversary proceeding. FED. R. BANKR. P. 7001(1). The Motion is an improper method of seeking turnover of the proceeds from the auction of the Equipment. Notwithstanding this procedural defect, the Court has considered the merits of the Motion.

   B. **The Relief Sought in the Motion is Barred by the Equitable Doctrine of Laches.**

   Pursuant to North Carolina law:

   > To establish the affirmative defense of laches, [the] law recognizes that 1) the doctrine applies where a delay of time has resulted in some change in the condition of the property or in the relations of the parties; 2) the delay necessary to constitute laches depends upon the facts and circumstances of each case; however, the mere passage of time is insufficient to support a finding of laches; 3) the delay must be shown to be unreasonable and must have worked to the disadvantage, injury or prejudice of the person seeking to invoke the doctrine of laches; and 4) the defense of laches will only work as a bar when the claimant knew of the existence of the grounds for the claim.

*Irby v. Freese*, 696 S.E.2d 889, 892, 206 N.C.App. 503, 508 (N.C.App. 2010) (internal citation omitted).

Movants waited nearly two years to seek redress for the alleged errors committed by the Trustee in auctioning the Equipment. Movants also waited to notify the Trustee that the Equipment may have been owned by H & N until after the Effective Date, the consequence of which was that the Debtors' bankruptcy estate abandoned any claim to H & N and, by extension, any of H & N's assets. Movants received written notice of the First Equipment Auction Motion and the Second Equipment Auction Motion but failed to object or otherwise respond thereto. Moreover, Hemphill cooperated with and physically participated in the Trustee's efforts to collect the Equipment for auction, but raised no objections to the sale of the Equipment at that time.

As a matter of equity, too much prejudice and delay exists in this case for Movants to now seek turnover the proceeds from the sale of the Equipment. Thus, the doctrine of laches applies here to bar Movants' claim for turnover.

### C. The Relief Sought in the Motion is Barred by the Confirmation of the Plan.

"[A]fter confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors." 11 U.S.C. § 1141(c). In addition to this statutory provision, the express language of the Plan: (a) releases the Trustee "and his present and former employees, representatives, counsel or agents" from "any and all claims, obligations, rights, causes of action, and liabilities for any act or omission in connection with, or arising out of, [this bankruptcy case] including, without limiting the generality of the foregoing, ... the administration of ... the property to be distributed under the Plan"; and (b) enjoins any person having a claim in or against the Debtors, the Debtors' bankruptcy estate or the Liquidating Trust

from "commencing . . . any . . . proceeding of any kind . . . against or affecting the Debtors' bankruptcy estate or the Liquidating Trust, or any of their then existing or subsequently acquired property or assets." *See* Plan, at 15–16.

Movants received a copy of the Plan during the plan disclosure and solicitation process, but raised no objections to the Plan or the release and injunction contained therein. By operation of § 1141 of the Bankruptcy Code and the language of the Plan itself, once the Confirmation Order was entered and the Effective Date had passed, Movants could not—and cannot now—seek the redress sought in the Turnover Motion out of Liquidating Trust assets.

**D. Movants Failed to Satisfy Their Burden of Proving Their Entitlement to Immediate Turnover of the Proceeds from the Auction of the Equipment.**

Despite having the burden of proving their entitlement to the proceeds from the auction of the Equipment, Movants produced evidentiary support that is confusing, at best. The titles for the Equipment and the "Receipt for Plate and/or Sticker" for the 1997 Peterbilt indicate that the Equipment was owned by "H & N Clearing and Grading," which is an entity that does not exist. In contrast, the vehicle registration and an international fuel tax license for the 1997 Peterbilt produced by Movants were in the name of "Hemphill Nolan Realty Group Inc," a corporation owned by the Debtors. The insurance for both pieces of Equipment were in the name of "Union Development Services," another corporation owned by the Debtors. Likewise, testimony given by Hemphill during the Deposition and the hearing on the Motion contained many inconsistencies, including contradictory allegations that the Equipment was owned by him personally and that the Equipment was owned by H & N. Based on the foregoing, Movants have failed to produce sufficient evidence to support their allegations that they are entitled to the proceeds from the auction of the Equipment.

For these reasons, the Motion is denied with respect to the request for turn over.

8

## II. Movants' Request for Leave to Pursue State Law Remedies Against the Trustee.

No foundation exists for granting Movants leave to pursue state law remedies against the Trustee in another forum. The Trustee gave credible testimony that he was unaware at the time of the auctions in question that the Equipment may have not belonged to the Debtors' bankruptcy estate. The Trustee reasonably and properly relied on representations made by the Debtors—including representations made under penalty of perjury on Schedule B to the Petition—that the Equipment was owned by the Debtors in their individual capacity.

Contemporaneously with the auctions, Movants failed to notify the Trustee or the Trustee's counsel that the Equipment may have not been property of the Debtors' bankruptcy estate. Again, Movants received written notice of the First Equipment Auction Motion and the Second Equipment Auction Motion but failed to object or otherwise respond thereto. Moreover, Hemphill cooperated with, and physically participated in, the Trustee's efforts to collect the Equipment for auction.

The Trustee did not discover until March 8, 2011 that any issues with the auctions were being raised by Movants. Despite Movants' allegations to the contrary, the Trustee responded to Movants' concerns by diligently conducting an investigation into the relevant facts. Ultimately, the Trustee concluded that insufficient evidence existed to seek a court order turning over to Movants all or a portion of the proceeds from the auction of the Equipment. The Court agrees with the Trustee's conclusion.

Based on the foregoing, the Court concludes that the request made by Movants in compliance with the Barton Doctrine should be denied here. There is no basis to grant Movants leave to pursue remedies against the Trustee in state court or any other forum. Any claims that Movants may have against the Trustee are properly litigated before this Court given that this

9

Court retains jurisdiction over the instant case as well as the authority to interpret and enforce its previous orders. Therefore, the Motion is denied with respect to the request for leave to pursue claims against the Trustee in state court.

**IT IS, THEREFORE, ORDERED** that the Motion is DENIED in its entirety.

| | |
|---|---|
| **This Order has been signed electronically. The judge's signature and court's seal appear at the top of the Order.** | **United States Bankruptcy Court** |