

FILED & JUDGMENT ENTERED
Steven T. Salata

Jun 19 2013

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

| | |
|---|---|
| In re:<br><br>William Joseph Nolan, III and Martha Louise Hemphill-Nolan,[1]<br><br>Debtors. | Case Number   09-31456<br><br>Chapter 11 |

## ORDER SURCHARGING EXEMPTIONS

This matter came before the Court on May 29, 2013 upon the *Motion for Order Surcharging Exemptions* (D.E. 764) (the "Motion") of Edward P. Bowers (the "Trustee"), the chapter 11 trustee for William Joseph Nolan, III, and Martha Louise Hemphill-Nolan (the "Debtors") and the trustee of the Marvin-Waxhaw Associates/Nolan Liquidating Trust established by agreement dated January 25, 2011 (the "Liquidating Trust"). The Trustee and his attorney, Michael L. Martinez of Grier Furr & Crisp, PA, were present at the hearing. The Debtors did not attend, or otherwise make an appearance at, the hearing. It appears that notice of the Motion was proper, and no objections were filed with respect to the Motion. The Court,

---

[1] This case has been substantively consolidated with *In re Marvin-Waxhaw Associates, LLC*, case number 09-31455.

1

having reviewed the pleadings and the record in this case and having considered the arguments of counsel at the hearing, finds and concludes as follows:

## BACKGROUND AND JURISDICTION

1.  The Debtors filed a voluntary petition (the "Petition") for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") on June 5, 2009 (the "Petition Date"), initiating the above-captioned bankruptcy case (this "Bankruptcy Case"). Pursuant to §§ 1107 and 1108 of the Bankruptcy Code and prior to December 16, 2009, the Debtors were in possession of their property and were managing their affairs as debtors-in-possession. On December 30, 2009, the Court appointed the Trustee as the Debtors' chapter 11 trustee in this Bankruptcy Case.

2.  On September 29, 2010, the Trustee filed his *Plan of Liquidation of Marvin-Waxhaw Associates, LLC and William Joseph Nolan, III and Martha Louise Hemphill-Nolan* (the "Plan"). On January 20, 2011, the Court entered an order confirming the Plan, as modified therein (the "Confirmation Order"). Pursuant to the Plan and Confirmation Order, all valuable assets of the Debtors' bankruptcy estate were transferred to the Liquidating Trust as of the February 4, 2011 effective date.

3.  This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334 and § 10.1 of the confirmed Plan. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O). The relief requested in the Motion would be dispensable but for this Bankruptcy Case; therefore, this matter necessarily stems from the Bankruptcy Case itself. *See Stern v. Marshall*, 131 S.Ct. 2594, 2618 (2011).

## FACTS

### THE AUTOMOBILES

4. On Schedule B to the Petition, the Debtors listed the following as interests held by the Debtors in automobiles, trucks, trailers, and other vehicles and accessories as of the Petition Date: (a) "2003 600 Mercedes Benz (60,000 mi)" (the "Mercedes"); and (b) "1956 T-bird (96,192 mi)" (the "Thunderbird"). On Schedule C to the Petition, the Debtors claimed $3,500.00 of the $60,000.00 scheduled value of the Mercedes as exempt and $3,500.00 of the $20,000.00 scheduled value of the Thunderbird as exempt, for a total combined $7,000.00 exemption in automobiles (the "Automobile Exemption").

5. On November 25, 2011, the Trustee sold the Thunderbird at a public auction, which generated $23,500.00 for the Liquidating Trust. Also, on September 27, 2012, the Trustee sold the Mercedes at a public auction, which generated $10,100.00 for the Liquidating Trust. The Trustee has not paid any portion of the Automobile Exemption from the proceeds of the auction of the Thunderbird or the Mercedes to the Debtors.

6. Despite the Trustee expressly informing the Debtors on several occasions of the Trustee's intent to liquidate the Mercedes, and despite the Trustee previously prosecuting an adversary proceeding against the Debtors for turnover of the Thunderbird,[2] the Trustee learned in the summer of 2011 that the Debtors had given the Mercedes to a friendly business associate.[3] As a result, the Trustee was compelled to initiate an adversary proceeding against the Debtors to regain possession of the Mercedes, adversary proceeding number 11-3214. The Liquidating

---

[2] *See Bowers v. Griffin (In re Nolan)*, Adv. Proc. No. 11-3106 (Bankr. W.D.N.C.).
[3] In connection with an objection to the Debtors' discharge, this Court previously determined that the Debtors transferred possession of the Mercedes to their friendly business associate with "the intent to hinder, delay or defraud" the Trustee or the Debtors' creditors. *See Bowers v. Nolan (In re Nolan)*, Adv. Proc. No. 11-3078, Order Granting Plaintiff's Motion for Summary Judgment (D.E. 38) (Bankr. W.D.N.C. Aug. 7, 2013).

Trust incurred no less than $4,354.00 in attorneys' fees and costs in regaining possession of the Mercedes.

## THE REAL PROPERTY

7. On February 2, 1998, the Debtors acquired a fee simple interest in a house and surrounding 6.898 acres of land off of Matthews-Weddington Road in Union County, North Carolina (the "Real Property"). On Schedule C to the Petition, the Debtors claimed a $37,000.00 homestead exemption in the Real Property (the "Homestead Exemption").

8. After the Petition Date, the Debtors continued to live on the Real Property. Basic costs of maintaining the Real Property, such as bills for electricity, gas, water, trash and insurance premiums, were paid first by the bankruptcy estate and then the Liquidating Trust. The Trustee did not require the Debtors to pay rent for the use of the Real Property; however, the Debtors were responsible for the upkeep and maintenance of the premises while they lived there.

9. From the time of the Trustee's appointment until around June 21, 2011, the Trustee worked with the Debtors in an attempt to find a scenario whereby: (a) the Debtors would remain in possession of the Real Property, and (b) the Debtors' creditors would receive adequate value for the equity existing in the Real Property. However, over the course of this Bankruptcy Case, the relationship between the Trustee and the Debtors steadily deteriorated, causing the Trustee to lose faith in his ability to work with the Debtors to efficiently liquidate property of the Liquidating Trust. The Trustee eventually concluded that an acceptable deal would not be reached with the Debtors for the purchase and sale of the Real Property.

10. On June 21, 2011, the Trustee, through counsel, provided the Debtors forty-five (45) days' advance written notice to vacate the Real Property on or before August 8, 2011. The Debtors did not voluntarily vacate the Real Property by August 8, 2011.

11. As a result, the Trustee was compelled to litigate several legal actions necessary to obtain actual possession of the Real Property, including: (a) a motion and hearing before this Court for authority to bring an eviction action in state court; (b) a state court eviction action; and (c) an appeal of the state court eviction action. Contemporaneously with the prosecution of the aforementioned litigation, the Trustee made multiple demands on the Debtors to vacate the Real Property, but the Debtors refused to do so.

12. Once a final judgment of possession was entered in the eviction action, the Trustee agreed to stay execution on the judgment of possession to give the Debtors even more time to try to buy back the Real Property from the Liquidating Trust. On February 29, 2012, the Debtors made a final offer to purchase a portion of the Real Property from the Liquidating Trust, which the Trustee ultimately accepted, subject to Court approval. After notice to creditors and an opportunity for hearing, the Court approved a sale of a portion of the Real Property to the Debtors.

13. However, shortly after entry of the order granting the motion to sell a portion of the Real Property to the Debtors, counsel for the Trustee discovered from the Debtors' mortgage broker that the financing needed by the Debtors to execute the transaction had fallen through.

14. On July 2, 2012, the Trustee, through counsel, sent a letter to the Debtors notifying them that they had until August 3, 2012, more than forty-five (45) days after entry of the order granting the motion to sell a portion of the Real Property to the Debtors, to either: (a) close on the transaction approved by the Court; or (b) vacate the Real Property. They did neither.

15. On August 6, 2012, the Trustee, through counsel, filed a request for the Union County Clerk of Superior Court to issue a writ of possession to the Union County Sherriff based

on the judgment obtained in the eviction action. On August 10, 2012, the Union County Clerk of Superior Court issued the writ of possession.

16.     On or about August 13, 2012, the Union County Sherriff served the Debtors with notice that the Debtors had until August 20, 2012 at 11:30 a.m. to voluntarily vacate the Real Property. Again, the Debtors refused to voluntarily vacate the Real Property. On August 20, 2012, the Sherriff provided a locksmith retained by the Trustee with access to the Real Property in order to change the locks to the house.

17.     The Liquidating Trust incurred no less than $14,082.00 in attorneys' fees and costs in acquiring possession of the Real Property from the Debtors.

**OTHER HINDRANCES TO THE TRUSTEE'S EFFORTS TO ADMINISTER THE ESTATE**

18.     In addition to refusing to comply with the Trustee's efforts to liquidate the Mercedes and the Real Property, the Debtors engaged in other misconduct throughout this Bankruptcy Case that caused actual financial harm to the Debtors' creditors. Notably, in October and November of 2010, the Debtors—without authority from the Court or the Trustee—executed several contracts and deeds purportedly conveying a substantial portion of the bankruptcy estate's assets to a co-conspirator named Carlton Rembert (the "Rembert Transfers").[4]

19.     To date, the Liquidating Trust has incurred no less than $40,722.70 in attorneys' fees and costs in unwinding the Rembert Transfers and acquiring clear title to a substantial portion of Liquidating Trust's assets.

---

[4] In connection with an objection to the Debtors' discharge, this Court previously determined that the Rembert Transfers were made with "the intent to hinder, delay or defraud" the Trustee or the Debtors' creditors. *See Bowers v. Nolan (In re Nolan)*, Adv. Proc. No. 11-3078, Order Granting Plaintiff's Motion for Summary Judgment (D.E. 38) (Bankr. W.D.N.C. Aug. 7, 2013).

6

## RELIEF GRANTED

20. Section 105(a) of the Bankruptcy Code provides bankruptcy courts with the discretion to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). This discretionary power extends to allowing bankruptcy courts to surcharge a debtor's exemptions in the appropriate circumstances. *See Malley v. Agin (In re Malley)*, 693 F.3d 28, 29–30 (1st Cir. 2012); *Latman v. Burdette*, 366 F.3d 774, 786 (9th Cir. 2004); *Scrivner v. Mashburn (In re Scrivner)*, 370 B.R. 346, 351–52 (10th Cir. B.A.P. 2007).

21. Bankruptcy courts have "permitted a trustee to surcharge debtor's exempt property for the estate's administrative fees incurred because of the debtor's failure or refusal to comply with its duties to cooperate with the trustee and deliver property of the estate to the trustee." *In re Price*, 384 B.R. 407, 411 (Bankr. E.D.Va. 2008).

22. Typically, a trustee may not seek recovery of costs incurred in the administration of the bankruptcy estate from exempt assets. 11 U.S.C. § 522(k). However, exceptional circumstances may justify charging exempt property with the cost to the estate of a debtor's wrongful post-petition conduct in order to protect the integrity of the bankruptcy process. *See, e.g.*, *In re Swanson*, 207 B.R. 76, 81 (Bankr. D.N.J. 1997) (concluding, as a matter of statutory construction, that expenses are not "necessary" within the meaning of § 503(b)(1)(A) when they would not have been incurred if the debtors had cooperated with the trustee and, therefore, are not prevented from being charged against exempt property by § 522(k)).

23. Specifically, when a debtor fails to vacate the debtor's principal residence per the bankruptcy trustee's direction, the costs incurred by the trustee in actually removing the debtor

7

from the premises may be charged against the debtor's claimed homestead exemption. *In re Onubah*, 375 B.R. 549, 555 (9th Cir. B.A.P. 2007); *Swanson*, 207 B.R. at 81.

24. In the record before the Court, it is not difficult to find exceptional circumstances warranting an exemption surcharge for costs incurred in curing post-petition misconduct by the Debtors. The Debtors have persistently refused to deliver property of the estate to the Trustee in this Bankruptcy Case. Rather, the Trustee has been forced to litigate multiple adversary proceedings to obtain property in the Debtors' possession or under the Debtors' control that should have been readily available for liquidation. For example, the Debtors completed the Rembert Transfers and the transfer of the Mercedes with the intent to defraud their creditors, requiring the Trustee to prosecute several lawsuits as the only recourse for regaining a portion of the value deliberately stripped away from the Liquidating Trust by the Debtors. Under these circumstances, surcharging the Automobile Exemption and the Homestead Exemption is necessary to preserve the integrity of the bankruptcy process by eradicating any notion that a debtor can freely obstruct a trustee's liquidation efforts without fear of losing the debtor's claimed exemptions.

25. Moreover, it would be an understatement to say that the Trustee bent over backwards to find an opportunity for the Debtors to purchase the Real Property from the Liquidating Trust. Nevertheless, when the Trustee ultimately determined that the Debtors needed to vacate the Real Property, the Debtors simply refused to deliver the Real Property to the Trustee, resulting in significant financial harm to the Liquidating Trust in the form of legal fees and costs. To honor the Debtors' Homestead Exemption without deducting these fees and costs would work a substantial injustice on the Debtors' creditors.

26. For these reasons, the Court concludes that the Motion should be allowed given the exceptional circumstances present in this Bankruptcy Case.

**IT IS, THEREFORE, ORDERED** that:

a) The Motion is GRANTED;

b) The Debtors' claimed exemption in the Mercedes is surcharged in the full amount of $3,500.00 as recovery for a portion of the $4,354.00 in attorneys' fees and costs incurred by the Trustee in regaining possession to the Mercedes;

c) The Debtors' claimed exemption in the Thunderbird is surcharged in the full amount of $3,500.00 as recovery for a portion of the $40,722.70 in attorneys' fees and costs incurred by the Trustee in unwinding the Rembert Transfers;

d) The Debtors' claimed exemption in the Real Property is surcharged in the full amount of $37,000.00 as recovery for (i) the $14,082.00 in attorneys' fees and costs incurred by the Trustee in obtaining possession to the Real Property, and (ii) a portion of the $40,722.70 in attorneys' fees and costs incurred by the Trustee in unwinding the Rembert Transfers; and

e) The Trustee is otherwise relieved from any obligation to honor the Debtors' Automobile Exemption or Homestead Exemption whatsoever.

**This Order has been signed electronically. The judge's signature and court's seal appear at the top of the Order.**

**United States Bankruptcy Court**